IN THE MATTER OF THE APPLICATION OF THE STATEN ISLAND RAPID TRANSIT RAILROAD COMPANY TO ACQUIRE TITLE TO CERTAIN REAL ESTATE OF WHICH JOHN H. STARIN AND OTHERS ARE THE OWNERS OR PERSONS INTERESTED.

*Subscription to the stock of a railroad— when a payment by a certified check will be treated as a payment "in cash"—* 1850, *chap.* 140, *sec.* 2.

April 13, 1880, a subscriber for the stock of a railroad company, which it was proposed to incorporate under chapter 140 of 1850, gave to one of the directors who was acting as treasurer a check drawn upon and certified by a national bank, which then held funds belonging to the subscriber sufficient in amount to pay the check. The check was deposited by the treasurer on the fourteenth and paid on the fifteenth of April.

*Held,* that it was a payment "in cash" within the meaning of those words, as used in section 2 of chapter 140 of 1850, requiring ten per cent of the amount of the subscriptions to be paid "in cash" before the articles of association can be filed in the office of the secretary of State.

APPEAL from the report and appraisal of commissioners appointed to ascertain and appraise the compensation to be made to land-

owners for certain pieces of land proposed to be taken for the purposes of a railroad.

*James McNamee*, for John H. and Laura M. Starin, appellants.

*W. W. MacFarland*, for the petitioner, respondent.

PRATT, J. :

This is an appeal from an order appointing commissioners to appraise lands of the appellants. Assuming, under the authority of the case reported in 72 New York, 249 (*Matter of Brooklyn, W. and N. Railway Co.*), that the appellants are right in their *certiorari* " that the landowner in this proceeding has the right to deny and disprove the corporate existence of the railroad company," only one question is presented for determination, to wit, whether or not the conclusion of law in the following words : " I find as a conclusion that prior to the filing and recording of such articles of association, and the annexed affidavit in the office of the secretary of State, at least one thousand dollars of stock for every mile of railroad proposed to be made had been subscribed thereto, and ten per cent paid thereon in good faith and in cash to the directors named in said articles of association," was properly found by the judge below ?

We need not notice the points made in the very elaborate briefs of the parties, as in our view briefly stated, the case must turn upon the question whether, under section 2, chapter 140 of Laws of 1850, a certified check can be regarded as cash if paid and received as such. Said section reads as follows : " Section 2. Such articles of association shall not be filed and recorded in the office of the secretary of State until at least one thousand dollars of stock for every mile of railroad proposed to be made is subscribed thereto, and ten per cent paid thereon in good faith and in cash to the directors named in said articles of association."

It appears that the subscriptions to the proper amount were made on the 13th day of April, 1880, and that the affidavit " that such subscriptions had been made " and the required " amount paid " thereon was also made on the same day, and the articles of association were filed in the office of the secretary of State on the following day.

Mr. Erastus Wiman subscribed for 100 shares. It is conceded that if the payment made. by Mr. Wiman was not a valid payment,

under the statute quoted above, there was not, at the time of filing the articles, the required amount paid in. The only payment made by Wiman was by a certified check, and under the following circumstances: On the 13th of April, 1880, Wiman made his check on the Central National Bank, where he had sufficient funds, and the check was certified by the bank, and afterwards was on the same day, and before the making of the affidavit, paid over to Mr. Emmons, who was a director, and who was acting treasurer of the board. The check was deposited by Emmons on the fourteenth and paid on the fifteenth of that month. There can be no question but that Wiman intended to pay his subscription by this check, and it is equally clear, I think, that Emmons and the directors intended to receive it as a payment in cash under the statute. The effect of the transaction was this, $900 had been set apart for the payment of that check by the Central National Bank, or in other words, that sum had been charged to the account of Wiman and it was represented in the check. By the check to Emmons the $900 was delivered to him, and if he elected to receive the cash in that form and credit the corporation with that amount, it was in effect a payment in cash. Wiman had parted with that amount of cash which he had in bank and Emmons had that amount of cash in the Central National Bank ready to be paid over as soon as he presented the check.

The appellants cite the case of *Durant* v. *Abendroth* (69 N. Y., 148) as opposed to this view. In that case no check even was given prior to making the affidavit. In the opinion, however, Judge Rapallo says: " If the special partner had paid the money to the bank to the credit of the general partners, or deposited it with any third party for the express purpose of being paid to the firm, etc., and had appropriated it to that purpose in such manner as to part with all control over it himself, there would be much force in the argument that this was a payment of his contribution of capital." In view of these statements in the opinion we cannot regard this case as an authority against the respondents. We think the judge below decided correctly.

Order affirmed, with costs.

Present — Barnard, P. J., Dykman and Pratt, JJ.

Order appointing commissioners affirmed, with costs and disbursements.